UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATHERINE ANN LAMAUR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-627 |
| | § | |
| UNITED STATES POSTAL SERVICE, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment[1] (Doc. 20) filed by Patrick R. Donahoe, Postmaster General, United States Postal Service ("Postal Service," or "Defendant") on all claims made by Catherine Ann LaMaur ("LaMaur," or "Plaintiff") in her Complaint (Doc. 1). After considering the motion, the facts in the record, and the applicable law, the Court concludes that Defendant's motion should be granted.

I.     **Background**

LaMaur has been employed by the Postal Service since 1982, and, at all times relevant to

---

[1] The Postal Service styles its motion as one for summary judgment *and to dismiss*, basing its Rule 12(b)(1) motion to dismiss LaMaur's 2006 claim on her untimely filing. (Mot. 19 ("The timely filing of a District Court complaint is jurisdictional and is not subject to waiver.")). Although there appears to be a split within the Fifth Circuit whether timely filing is, in fact, a requirement for the court's subject matter jurisdiction or a condition precedent to the plaintiff's filing suit, *compare Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990) (finding that "it is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction"), *with Young v. City of Houston, Tex.*, 906 F.2d 177, 180 (5th Cir. 1990) ("A failure of the [Title VII prerequisites] does not rob a court of jurisdiction."), *and Coke v. Gen. Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981) (concluding "that the [timely filing requirement] is a pre-condition to filing suit in district court, but is not related to . . . subject matter jurisdiction"), the "Supreme Court has held that the EEOC or EEO filing deadlines are not jurisdictional," *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)). Moreover, "the reasoning in *Zipes,* which cites [the Fifth Circuit's] *en banc* holding in *Coke* with approval, relies heavily on legislative history and Supreme Court precedents that characterize the filing deadlines as statutes of limitations." *Id.* Thus, this Court treats the Postal Service's claim of LaMaur's untimely filing as an affirmative defense and its motion on this ground as one for summary judgment. *See Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) ("Because the statute of limitations is an affirmative defense and not a pleading requirement, it is an issue that must be resolved through discovery and summary judgment or trial."), *cert. denied*, 132 S. Ct. 1561 (U.S. 2012).

this lawsuit, served as a city letter carrier at the Fairbanks Station in Houston, Texas. (Doc. 20 at 4). LaMaur brings this suit for disparate treatment and retaliation, and bases it on two complaints she filed with the Equal Employment Opportunity Commission ("EEOC"); the first in 2006, the second in 2007. The 2006 complaint,[2] based on activity from July 28 to September 8, 2006, alleges discrimination based on race (Caucasian), sex (female), religion (Catholic), age (over 40), and disability (stress), and retaliation for prior EEO activity, including seventeen previous complaints. (Doc. 1 at 2, 5; Doc. 20-3 at 8). The 2007 complaint,[3] based on activity from March 29 to April 24, 2007, alleges discrimination based on race and retaliation for prior EEO activity. (Doc. 1 at 3-4; Doc. 20-5 at 8). Additionally, LaMaur claims that the racial harassment created a hostile work environment. (Doc. 1 at 5-7).

    A.    *2006 Claims*

In the 2006 EEO complaint, LaMaur stated her numerous allegations of discriminatory acts during the period from July 28 to September 8, 2006 as follows:

> she was harassed when (i) her personal items were removed from her case; (ii) religious items were banned from her vehicle; (iii) her vehicle was sprayed with an unknown substance; (iv) management delayed providing first aid and medical treatment; (v) she was refused injury compensation services; (vi) on August 3, 2006, management cancelled her EEO appointment with her representative and stopped paying her mileage for EEO travel and would not pay her sick leave; (vii) on August 11, 2006, she was required to wait three hours for approval for an OWCP doctor's visit; (viii) on August 22, 2006, the USPS responded to OSHA with a false statement regarding a smell in her Postal vehicle; (ix) on August 26, 2006, she received a letter that the FMLA leave used on February 11, 2006 was denied; (x) on August 31, 2006, her request for information regarding advanced sick leave, sick leave notice, pay shortages, and identification of the irritant in her vehicle had not been responded to; [and] (xi) on September 8, 2006, she was charged with LWOP instead of being awarded OWCP and she has not been paid for seventeen hours.

---

[2] Agency Case No. 4G-770-0318-06 (Doc. 20-4).
[3] Agency Case No. 4G-770-0281-07 (Doc. 20-5).

(Doc. 20-9 at 1056). On August 13, 2008, the EEOC held an administrative hearing on LaMaur's claims, and on September 16, 2008, issued a decision "find[ing] no discrimination." LaMaur v. Potter, EEOC Decision No. 460-2007-00102X, at 11 (Sept. 16, 2008) (Doc. 20-9 at 1064). On September 19, 2008, the Postal Service issued a notice of final action ("NFA"), giving LaMaur the option of either appealing to the EEOC's Office of Federal Operations ("OFO") within thirty days or filing a civil action in federal court within ninety days. (Doc. 20-10 at 1068-69).

In her complaint, LaMaur states that she "is appealing Agency No. 4G-770-0318-06 which is presently on appeal before the Office of Federal Operations." (Doc. 1 at 1). The Postal Service, however, has never received notice indicating that LaMaur filed an appeal with the OFO, and the OFO "has repeatedly indicated that it has no record that LaMaur ever properly appealed that case." (Doc. 20 at 3).

  *B.*  *2007 Claims*

In her 2007 EEO complaint, LaMaur alleged discrimination when "(i) on March 29, 2007 [her] vehicle was again sprayed for the second time and management tolerated this action; and (ii) on April 24, 2007 [she] was issued a 7-day suspension." LaMaur v. Potter, No. 4G-770-0281-07, at 1 (USPS Feb. 26, 2009) (final agency decision) (Doc. 20-13 at 1164).

On March 29, 2007, LaMaur had the day off and Ollie Norfleet ("Norfleet"), a relief carrier at the Fairbanks Station, was assigned to cover her route. (Mot. 5). In accordance with standard procedure, Norfleet used the postal vehicle assigned to that route, i.e., the vehicle normally used by LaMaur. (Mot. 5). When LaMaur returned on March 30, 2007, she reported to Acting Manager James Miles ("Miles") that the vehicle had been "saturated" with an "irritant." (Mot. 5 (quoting LaMaur Aff. 4-5, Sep. 27, 2007, Doc. 20-6 at 271-72)). Miles inspected the vehicle and detected the scent of insect repellant, but he found no evidence of saturation and

found the scent to be "no stronger than [that] of an aftershave or perfume." LaMaur v. Potter, No. 4G-770-0281-07, at 11 (USPS Nov. 7, 2007) (investigative report) (Doc. 20-5 at 224) (citing Miles Aff. 1, Oct. 22, 2007, Doc. 20-6 at 279). Miles concluded that Norfleet neither intended to nor did, in fact, violate any rules or regulations and, accordingly, did not discipline him. (Mot. 7). Nevertheless, to prevent future complaints, Miles (i) ordered Norfleet to spray himself with insect repellant while outside; (ii) purchased a lightly scented spray for Norfleet to use; and (iii) instructed Michael Walker ("Walker"), LaMaur's supervisor, to assign a different vehicle to Norfleet, if possible, whenever he covered LaMaur's route. (Doc. 20-6 at 279).

LaMaur was dissatisfied with the lack of disciplinary action taken against Norfleet, (Mot. 6 (citing LaMaur Aff. 2)), and on March 30, 2007, asked Miles to sign a document she had written reiterating what Miles had told her he would do to resolve the situation, (Doc. 20-6 at 280). Miles instructed her to submit the paperwork through her supervisor, but LaMaur, while still on the workroom floor, responded by growing louder and shouting, "You don't give a shit about me!" (Doc. 20-6 at 280). LaMaur was removed from the workroom and later, when asked about the incident by Walker, she expressed no remorse over her behavior, asserting that she has "to protect [herself] because no one cares about her." (Doc. 20-6 at 283-84). Because of this behavior, Walker decided to suspend LaMaur for seven days. (Mot. 7). LaMaur filed a grievance, resulting in a May 4, 2007 agreement reducing her punishment to a letter of warning, which would be expunged from her record after three months if she did not have any more disciplinary issues during that time. (Doc. 20-6 at 276). Three months later, the letter was expunged. (Mot. 8).

LaMaur continued to pursue her EEO complaint, but on August 27, 2009, the EEOC upheld the Postal Service's finding of no discrimination, (Doc. 20-14 at 1189), and on November

25, 2009, it denied her request for reconsideration, thereby making its decision final, *LaMaur v. Potter*, EEOC Request No. 0520100035, at 2 (Nov. 25, 2009) (Doc. 20-14 at 1190). Because LaMaur had "no further right of administrative appeal," her only remaining option was "to file a civil action in an appropriate United States District Court within ninety (90) calendar days" of receipt of the decision, which was presumed to be five days later. (Doc. 20-14 at 1190-91).

On February 28, 2010, exactly ninety days after the date of presumptive receipt, LaMaur filed her complaint, and on July 20, 2012, the Postal Service filed its motion for summary judgment. LaMaur has not filed a response.

## II.     Legal Standards

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, the essential elements are determined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.*; and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*; each of which prohibits forms of discrimination and retaliation.

Claims of discrimination or retaliation based on circumstantial evidence, as they are here, are analyzed under the three-step burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Patrick v. Ridge*, 394 F.3d 311, 315 & n.10 (5th Cir. 2004). First, the plaintiff must establish a prima facie case of discrimination or retaliation, the specific requirements of which vary according to the particular

...

claim. *Id.* at 315. If successful, the plaintiff creates a rebuttable presumption of unlawful activity. *Id.* In the second step, the defendant has a burden of production, which it can meet only by "articulat[ing] a legitimate, nondiscriminatory [or nonretaliatory] reason" for its activity. *Id.* If the defendant meets its burden, in the third step the plaintiff "must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination." *Id.*

### III. Discussion

Under Local Rule 7.3, LaMaur had twenty-one days to submit a response in opposition to Defendant's motion, which was filed on July 20, 2012. Three months later, on October 19, 2012, LaMaur submitted a motion for an extension of time to respond (Doc. 22), which, when granted, gave her until November 6 to file her response. (Order, Oct. 24, 2012, Doc. 24). Despite being afforded this second chance, LaMaur again failed to meet her deadline, and, according to Local Rule 7.4, such failure to respond is taken as a representation of no opposition. Still, Defendant must meet its burden of identifying evidence that no genuine issue of material fact exists. It can meet that burden by pointing to the absence of evidence supporting an essential element of each of LaMaur's claims. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

#### A. 2006 Claims

With regard to LaMaur's 2006 claims, the threshold question is whether she has met the conditions precedent to filing suit. Title VII sets two requirements for filing a civil action in federal court: first, exhausting administrative remedies; second, filing in a timely manner. *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998). A plaintiff exhausts her administrative remedies when she has both submitted a timely complaint to the EEOC and received notice of the right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). A plaintiff's

filing in federal court is timely if made within ninety days of receipt of such notice. 42 U.S.C. § 2000e-5(f)(1); *see also Taylor*, 296 F.3d at 379.

Defendant argues that LaMaur's claim is barred because she failed to meet this federal court filing deadline, (Mot. 19), and refers to the Postal Service's notice, which reads in relevant part:

> [I]f you are dissatisfied with the Postal Service's final decision in this case, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered.

(Doc. 20-10 at 1069). In other words, LaMaur had two choices: (i) file a civil action within ninety days or (ii) file an appeal with the EEOC and maintain the right to file a civil action at a later date. LaMaur claims that she pursued the second option, (Doc. 1 at 2 ("Plaintiff . . . is appealing Agency No. 4G-770-0318-06 which is presently on appeal before the Office of Federal Operations.")), but the record shows that is not the case. LaMaur never provided the Postal Service with her notice of appeal to the OFO, the OFO has no record of receiving such an appeal, and the record in this case is devoid of any evidence supporting LaMaur's claim. (Mot. 3). Absent such evidence, the only remaining question is whether LaMaur timely filed this civil action. The Postal Service issued its notice on September 19, 2008, and LaMaur filed her complaint on February 28, 2010—more than 17 months later. Thus, LaMaur cannot meet the Title VII prerequisites, and Defendant is entitled to summary judgment on her 2006 claims.

    B.    *2007 Claims*

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42

U.S.C. § 2000e-2(a)(1). This prohibition "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment. 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (Thomas, J., concurring) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "The conditions of employment are altered only if the harassment culminated in a tangible employment action or was sufficiently severe or pervasive to create a hostile work environment." EEOC Notice No. 915.002 (June 18, 1999).

    *1.    Racial Discrimination*

Applying the *McDonnell Douglas* burden-shifting framework, LaMaur bears the initial burden of establishing a prima facie case of racial discrimination. To meet this burden, she must offer evidence supporting each of four elements: (i) she is a member of a protected class; (ii) she was qualified for her position; (iii) she was the subject of an adverse employment action; and (iv) she was treated less favorably than similarly situated employees who were not members of the protected class under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)) (internal quotation marks omitted). The two actions at issue are the spraying of insect repellant inside LaMaur's postal vehicle and the seven-day suspension allegedly handed down by her supervisor. Neither rises to the level of an "ultimate employment decision." The first act was not an employment decision at all and, in fact, was committed by a

coworker with no authority to even make such decisions. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 768 (1998) (defining tangible employment decisions as "company acts that can be performed only by the exercise of specific authority granted by the employer"). The second action was never actually committed, as the threatened suspension was never enforced; rather, it was first reduced to a letter of warning and, three months later, completely expunged from LaMaur's employment record. Furthermore, LaMaur offers no evidence that she was treated less favorably than other employees in nearly identical circumstances, let alone employees who were not members of the protected class. These facts are undisputed, and they show that LaMaur cannot establish a prima facie case of discrimination. Defendant is entitled to summary judgment on this claim.

       2.    *Hostile Work Environment*

A plaintiff claiming a racially hostile work environment must show that (i) she belongs to a protected class; (ii) she was subjected to unwelcome harassment; (iii) the harassment complained of was based on race; (iv) the harassment affected a term, condition, or privilege of employment; and (v) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Frazier v. Sabine River Auth. La.*, No. 12-30750, 2013 WL 363121, at *4 (5th Cir. Jan. 30, 2013). A hostile work environment is different from a discrete discriminatory act in that it necessarily involves repeated conduct. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). "The 'unlawful employment practice' therefore cannot be said to occur on any particular day," but over time and including acts that may not be individually actionable. *Id.* Accordingly, all relevant circumstances must be considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." *Frazier*, 2013 WL 363121, at *4 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks omitted)).

Applying this standard, LaMaur's claim fails for multiple reasons. First, there is zero evidence that any alleged harassment was based on race, or, for that matter, any protected characteristic. Second, no trier of fact could reasonably conclude from a couple of isolated incidents that LaMaur suffered harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Carrera v. Commercial Coating Servs. Int'l, Ltd.*, 422 F. App'x 334, 337 (5th Cir. 2011) (quoting *Harris*, 510 U.S. at 21) (internal quotation marks omitted), *cert. denied*, 132 S. Ct. 501 (U.S. 2011). Finally, the "incidents," assuming that they even needed any remedy, were in fact remedied: first, Miles took steps to prevent further spraying of insect repellant in LaMaur's vehicle; second, he agreed to reduce her suspension to a letter of warning and, eventually, to no disciplinary action at all. Not only does the Court find no evidence of a hostile work environment, it finds the actions of LaMaur's supervisors commendable for their measured and reasonable approach. As LaMaur has no evidence to establish a prima facie case, her hostile work environment claim cannot survive summary judgment.

    *3.*    *Retaliation*

A prima facie case of retaliation consists of three elements: (1) engaging in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009). Although LaMaur's eighteen previous EEO complaints are sufficient proof of her engaging in a protected activity, nothing in the record supports a finding of the other two elements. First, as discussed above, LaMaur has not suffered any adverse employment actions.

Second, even if the actions complained of could be considered adverse, the record is devoid of evidence linking them to LaMaur's protected activity. Although "a plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case," *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996), she must show that it was at least *some* motivating factor. The evidence, however, points to only one factor motivating her supervisors' decisions: to promote the good behavior of its employees. (*See* Doc. 20-6 at 279-81).

Because there is insufficient evidence to establish even a prima facie case of discrimination or retaliation, there is no need to advance to the second step of the *McDonnell Douglas* burden-shifting framework. The undisputed facts paint a landscape barren of evidence supporting LaMaur's claims; consequently, Defendant is entitled to summary judgment on all causes of action.

### IV.     Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment and to Dismiss (Doc. 20) is **GRANTED** and Plaintiff's claims be **DISMISSED**.

SIGNED at Houston, Texas, this 20th day of March, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE